

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

October 11, 1967

Honorable John L. Hill
Secretary of State
State of Texas
Austin, Texas

Opinion No. M-145

Re: Whether under the
Texas Election Code
a County Tax Assessor-
Collector, acting in
his capacity as the
registrar of voters
in his county, is au-
thorized to accept ap-
plications for voter
registration certifi-
cates mailed or de-
livered to him by some-
one other than the ap-
plicants themselves or
the husband, wife, father,
mother, son or daughter of
Dear Mr. Hill:                          an applicant.

        In a recent letter to this office you requested our
opinion in regard to the above referenced matter. We quote from
your letter as follows:

        "The Tax Assessor-Collector of Hidalgo
    County has asked me to request a ruling on
    whether the Assessor-Collector, as the reg-
    istrar of voters in his county, is author-
    ized to accept applications for voter reg-
    istration certificates which are mailed to
    him in a group, indicating that they were
    mailed by someone other than the appli-
    cants themselves.  A second question, which
    is an extension of the first, is whether
    the Assessor-Collector is authorized to
    accept applications which are brought to
    his office in a group for delivery in
    person.

        "It is my understanding that the per-
    tinent statute, Article 5.13a of the Texas
    Election Code, has been given different

-674-

interpretations by the various Assessor-
Collectors of the State. I am requesting
a ruling by your office in pursuance of
the responsibility placed upon me by the
1967 amendment to Article 1.03 of the
Election Code to obtain and maintain uni-
formity in the application, operation and
interpretation of the election laws."

Vernon's Civil Statutes, Election Code, Article 5.13a,
provides as follows:

"(1) A person may apply for regis-
tration in person or by mail as provided
herein. When an applicant for regis-
tration applies in person, he shall fur-
nish the registrar the necessary infor-
mation to enable the registrar to fill
out the blanks in the registration certi-
ficate, and the registrar shall immediately
make out and deliver a registration certi-
ficate to the applicant, if he is entitled
to register. An application made by mail
must be made upon forms prescribed by the
registrar and upon which forms the appli-
cant shall supply the information necessary
for registration as prescribed in Section
47a of this Code. The application form
shall contain the following statement:
'I understand the giving of false infor-
mation to procure the registration of a
voter is a felony.' The application shall
be signed by the applicant or his agent.

"When a properly executed application
is received by the registrar, the registrar
shall make out a registration certificate
and shall mail the registration certificate
to the voter for whom it is issued at his
permanent address; or, if the applicant is
temporarily residing outside the county and
requests that the certificate be mailed to
the temporary address, the registrar shall
mail it to the temporary address; or the
registrar shall hold the certificate to
be delivered to the applicant in person.
The application shall be deemed to have
been placed in the mail on or before the
last day of the registration period, as

shown by the postmark on the envelope, and was delivered to the registrar on or before the fifth day following the close of the registration period. Within the meaning of this Section, the application is delivered when it is actually placed into the possession of the registrar or his duly authorized agent by a post office employee, or is deposited into the registrar's mail box, or is left at the usual place of delivery for the registrar's official mail.

"The registrar shall file and preserve all applications received by mail for a period of two years.

"(2) The husband, wife, father, mother, son, or daughter of a person entitled to register may act as agent for such person in applying for registration, without the necessity of written authorization therefor, may sign for the applicant when application is by mail, and may receive the registration certificate. However, none of the above may act as agent unless he is a qualified elector of the county. No person other than those mentioned in this subsection may act as agent for a person in applying for registration.

"Except as herein permitted, a person who willfully acts as agent for another in applying for registration or in obtaining a registration certificate is guilty of a misdemeanor and upon conviction is punishable by a fine of not less than Fifty Dollars ($50) nor more than Five Hundred Dollars ($500).

"(2a) Nothing in this Section shall be construed to prevent the registrar or a deputy from rendering aid to an applicant who is physically unable to complete the application or to an applicant who requires assistance in completing the application by reason of his inability to read and write the English language.

"(3) A registrar of voters who knowingly

issues a registration certificate to a per-
son other than the applicant or his lawful
agent, or who knowingly mails or delivers a
registration certificate to a person other
than the applicant or his lawful agent, is
guilty of a misdemeanor and upon conviction
shall be immediately removed from office and
fined not less than One Hundred Dollars ($100)
nor more than One Thousand Dollars ($1,000)."

This statute, enacted in 1966 after payment of the
poll tax as a requirement for voting had been declared invalid,
was an adaptation of the pre-existing statute on modes for pay-
ment of the poll tax. As last amended in 1963, that statute
(Article 5.11 of the Election Code) read as follows:

"The poll tax must be paid by the tax-
payer in person or by a remittance of the
amount of the tax through the United States
mail to the county tax collector, accompany-
ing the remittance with a statement in writ-
ing, signed by the taxpayer, showing all
the information necessary to enable the
tax collector to fill out the blank form
of the poll tax receipt. When payment
is made by mail, the tax collector shall
mail the receipt to the taxpayer at the
taxpayer's permanent address, or, if re-
quested to do so by the taxpayer at such
other address as the taxpayer directs, or
shall hold the receipt to be delivered to
the taxpayer in person. The husband or
wife, father, mother, son, or daughter of
a taxpayer may pay the tax for the tax-
payer in either of the modes herein au-
thorized, and may sign for the taxpayer
when payment is by mail, and may receive
the poll tax receipt issued to the tax-
payer. Except as herein permitted, it
shall be unlawful for any person to pay
the poll tax of another or to act as a-
gent for another in payment of the tax.
It shall be unlawful for the tax col-
lector to mail or deliver a poll tax
receipt to any person other than the
taxpayer or a person lawfully acting in
his behalf in the payment of the tax.

"The tax collector may at such

places as shall in his discretion be
necessary or advisable, have a duly au-
thorized and sworn deputy for the pur-
pose of accepting poll taxes and giving
receipts therefor, and issuing exemp-
tion certificates."

The authorized modes are (1) application in person
by the voter or by someone within the classes of relatives per-
mitted to act as the voter's agent, and (2) written application
by mail, signed either by the voter or by an authorized rela-
tive. Subsection (2) of Article 5.13a, quoted above, makes it
a misdemeanor for a person not authorized by the statute to will-
fully act as the agent for another person in applying for regis-
tration or in obtaining a registration certificate. We cannot
find any basis in the language of the present statute or of its
immediate precursor for sanctioning either personal delivery
or delivery by mailing of an application to the registrar by
some third person not within the classes of persons who may act
as agent. It would be unreasonable to give a construction to
the statute which allowed third persons to collect bundles of
applications and mail them to the registrar while not allowing
them to deliver the bundles in person, since personal delivery
by the intermediary would provide more safeguards against fraud
and abuse than would mailing. The statute very plainly does
not authorize personal delivery by third persons. We think this
is a clear indication that the Legislature did not intend to
permit an applicant for registration to turn over his application
to a third person for mailing to the registrar. The right to
vote is a personal right which accures to a person on an indi-
vidual basis and, therefore, the act of qualifying to exercise
the voting right by registration is logically an act which must
be personally and individually performed except as this rule
is clearly modified by law. Article 5.13a specifically allows
certain members of the immediate family of an applicant for regis-
tration to act as the applicant's agent. It is our opinion that
the present statute wherein it says, "a person may apply for
registration in person or by mail as provided herein" will permit
of no construction save that the applicant must personally and
individually deliver his application for registration into the
hands of the registrar or must personally and individually deliver
his application into the custody of the United States mails.
The members of the applicant's family enumerated in the stat-
ute may perform one of these functions for the applicant. The
registrar is under no duty to accept any application, either
in single or multiple numbers, which is delivered or mailed to
him by a person other than the applicant or a person who is speci-
fically authorized by statute to act as the applicant's agent.

In construing the Texas Election Code, whether or not considered ambiguous, we are at liberty to make use of construction aids as set out in Sec. 3.03 of the Code Construction Act, Acts 60th Legislature 1967, Regular Session, chapter 455, page 1036.

The background history of Article 5.13a, and particularly the change made in the predecessor statute in 1963, sheds light on the legislative intent in regard to application by mail.

Under the Terrell Election Law of 1905, the poll tax of a person not living in a city of 10,000 or more inhabitants could be paid either "by him in person or by someone duly authorized by him in writing to pay the same." The tax of a person living in a city of 10,000 or more had to be paid in person, except that it could be paid "through an agent authorized by him in writing" if he was going to be absent from the county during the entire period for paying the tax (October through January). Neither the taxpayer himself nor his agent could pay the tax through the mail.

In 1921, with the advent of woman suffrage, the law was changed to permit the husband or the wife to pay the poll tax of the other.

In 1929, a provision was added to permit a property taxpayer residing either within or without a city of 10,000 who had a poll tax assessed against him to pay the poll tax by mail along with the property tax if he was paying his property tax by mail. An amendment in 1941 extended the authorization for payment by mail to any person owing the poll tax, whether liable for a property tax or not.

The Election Code in 1951 continued the blanket authorization for payment either in person or by mail for all persons subject to the poll tax, and also extended to residents of cities of 10,000 or more the unconditional authorization for payment through an agent which had theretofore been accorded only to persons not living in cities of 10,000 or more. As enacted in 1951, Article 5.11 of the Election Code read:

> "The poll tax must either be paid in person or by someone duly authorized by the taxpayer in writing to pay the same, and to furnish the Collector the information necessary to fill out the blanks in the poll tax receipt. Such authority and information must be signed by the party who owes the poll tax, and must be deposited with the Tax Collector and filed and preserved by him. A taxpayer

> may pay his poll tax by a remittance of the
> amount of the tax through the United States
> mail to the County Tax Collector, accompany-
> ing said remittance with a statement in writ-
> ing showing all the information necessary to
> enable the Tax Collector to fill out the
> blank form of the poll tax receipt, which
> statement must be signed by the party who
> owes the poll tax under oath, but the hus-
> band may sign for the wife and in like man-
> ner the wife may sign for the husband,
> . . . ."

The law remained in this form without material change
until 1963. Under the authorization for payment of the poll
tax through an agent, it became common practice in voter regis-
tration drives for persons acting in behalf of civic or poli-
tical organizations and groups to solicit and obtain applica-
tions from numerous voters in bulk quantities. Sometimes the
agents delivered the applications to the tax collector in per-
son, and sometimes they mailed them to the tax collector. The
method of delivery and the number mailed or delivered at one
time were unimportant; the distinctive characteristic of the
agency arrangement was that the agent obtained intermediate pos-
session of the application between the voter and the tax col-
lector. In actual practice, the most common form of agency oc-
curred in instances where an individual or a group, acting in
a solicitation role, obtained and transmitted multiple numbers
of applications to the tax collector at one time.

In 1963 the Legislature amended the statute to eli-
minate registration through an agent, except through a spouse,
a parent, or a child of the voter. This change in the law must
be taken as legislative disapproval of the agency system, which
as we have said, was characterized mainly by a third person's
intermediate possession of the voter's application for regis-
tration. We believe this was the very thing that the Legisla-
ture was seeking to eliminate by the amendment. To construe
the amended law as permitting essentially the same arrangement
does violence to the apparent legislative intent in making the
change. In fact, a system which would permit third persons to
take possession of the applications under the present statute
would not only continue the features of the former agency system
which the Legislature evidently found to be objectionable, but
in many instances would remove one of the safeguards of the for-
mer system--revelation of the identity of the intermediary.

## S U M M A R Y

A County Tax Assessor-Collector is not authorized to accept applications for voter registration certificates mailed or delivered to him by someone other than the applicants themselves or the husband, wife, father, mother, son or daughter of an applicant.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Lewis E. Berry Jr.
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
W. V. Geppert
John Grace
John Reeves
Harold Kennedy

A. J. CARUBBI, JR.
Staff Legal Assistant